IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
PARKERSBURG

**DARRELL R. KERNS,**

    **Plaintiff,**

v.                              **CASE NO. 6:10-cv-01101**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Both parties have submitted briefs in support of their positions.

Plaintiff, Darrell R. Kerns (hereinafter referred to as "Claimant"), filed an application for DIB on February 26, 2008, alleging disability as of January 15, 2003, due to hip and leg problems, arthritis in the joints, hypertension and cholesterol. (Tr. at 102-04, 135.) The claim was denied initially and upon reconsideration. (Tr. at 52-54, 57-59.) On October 18, 2008, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 62-63.) The hearing was held on November 17, 2009, before the Honorable John W. Rolph. (Tr. at 24-48.) By decision dated December 15, 2009, the ALJ determined that Claimant

was not entitled to benefits. (Tr. at 14-20.) The ALJ's decision became the final decision of the Commissioner on August 20, 2010, when the Appeals Council denied Claimant's request for review. (Tr. at 1-4.) On September 14, 2010, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2009). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant

is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2009). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 16.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairment of degenerative joint disease of the left hip. (Tr. at 16.) At the third inquiry, the ALJ concluded that Claimant's impairments does not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 17.) The ALJ then found that Claimant has a residual functional capacity for medium work, reduced by nonexertional limitations. (Tr. at 17.) As a result, Claimant could return to his/her past relevant work. (Tr. at 20.) On this basis, benefits were denied. (Tr. at 20.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial

3

evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

Claimant's Background

Claimant was sixty-three years old at the time his insured status expired on March 31, 2007. (Tr. at 16, 167.) Claimant graduated from high school and served in the United States Navy. (Tr. at 30.) In the past, he worked as a copy technician and as an electrician. (Tr. at 31-33.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

Evidence before Expiration of Claimant's Insured Status on March 31, 2007

On August 23, 1995, Claimant reported to the emergency room after the back tire of a tractor accidently rolled over his pelvis and legs. Claimant denied any back pain. X-rays showed bilateral pubic and ischial rami fractures. (Tr. at 245-47.) The record includes treatment notes from Gregory B. Krivchenia, II, M.D. dated September 7, 1995, through November 14, 1995. Dr. Krivchenia examined Claimant following his hip injury. Claimant's

injury healed well, and he eventually was released to normal activity. (Tr. at 182-84.) On October 10, 2002, an MRI of Claimant's lumbar spine showed a slight degree of anterior listhesis of L4 on L5 with a minimal bulge with associated mild or early canal stenosis. There was a generalized bulge without stenosis at L5-S1. No focal disc herniation was identified. (Tr. at 267.)

The record includes treatment notes from the VA Medical Center. On July 31, 2006, Claimant had a history of hypertension, dyslipidemia, alcohol use and tobacco use. Claimant complained of heartburn. Claimant was diagnosed with hypertension, dyslipidemia, alcohol use, tobacco use, reflux symptoms and hyponatremia. (Tr. at 220-21.) On September 29, 2006, Claimant reported for follow up related to his symptoms of hypertension and recent switch of medications due to hyponatremia. Claimant reported he was doing well without "problem or complaint." (Tr. at 218.) Claimant reported he was smoking less. (Tr. at 218.) Claimant's diagnoses included hyponatremia, resolved, hypertension and tobacco use. (Tr. at 218.) On January 29, 2007, Claimant asked to have his Atenolol reordered for him. His blood pressure was 120/90. His diagnosis was hypertension. (Tr. at 216.)

Evidence after Claimant's Insured Status Expired on March 31, 2007

On April 2, 2007, Claimant reported to the VA Medical Center and was examined in follow up for his hypertension. Claimant reported no new complaints. Claimant's blood pressure was 144/88. Claimant was prescribed Lisinopril 10 milligrams daily along with the Atenolol. (Tr. at 214.) On June 7, 2007, Claimant was examined again for follow up related to his blood pressure. He reported that home readings were from 150 to 160 on the top to the low 90s on the bottom. Claimant had no complaints. Claimant's blood pressure

was 148/96.  Claimant was diagnosed with hypertension and his Lisinopril was increased to 20 milligrams per day.  (Tr. at 213.)  On August 9, 2007, Claimant reported for follow up related to his hypertension.  Claimant had no complaints.  His blood pressure was 120/82.  (Tr. at 208-09.)

On October 1, 2009, x-rays of Claimant's left hip showed degenerative joint disease.  (Tr. at 264.)

On January 20, 2009, Sushil M. Sethi, M.D. examined Claimant at the request of the State disability determination service.  Claimant reported a history of chronic back pain following a farm tractor accident fifteen years earlier.  Claimant also reported hypertension, tobacco abuse and gastroesophageal reflux.  (Tr. at 227.)  Claimant reported he no longer drinks alcohol.  (Tr. at 228.)  Dr. Sethi's impression was history of farm tractor accident in 1994 with possible arthritic complaints of the left sacroiliac area, hypertension, under control, gastroesophageal reflux, chronic smoking habit, possible mild bronchitis.  (Tr. at 229.)  Dr. Sethi opined that "[b]ased on my objective findings, the claimant's ability to do work related physical activities such as sitting, standing, walking, lifting, carrying and handling objects is moderately limited."  (Tr. at 229.)  Dr. Sethi completed a Medical Source Statement of Ability to do Work-Related Activities (Physical).  (Tr. at 234-40.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ failed to follow the "slight abnormality" rule when he found that Claimant's back impairment was not severe; and (2) the ALJ erred when he found that Claimant had the residual functional capacity to perform the full range of medium work through the date last insured of March 31, 2007.  (Pl.'s Br. at 2-5.)

The Commissioner argues that (1) Claimant's back impairment was not severe; and (2) substantial evidence supports the ALJ's decision that Claimant was capable of performing medium work and was not disabled between January 15, 2003, his alleged onset date, and July 31, 2007, his date last insured. (Def.'s Br. at 6-9.)

Severe Impairments

First, Claimant argues that the ALJ erred in failing to find that his back impairment was not a severe impairment. Claimant relies on the MRI from 2002 and the fact that Claimant had not undergone surgery or any procedure to correct the abnormal findings from the 2002 MRI. Claimant asserts that his back pain had more than a minimal effect on his ability to do basic work activities and, as a result, should have been found to be severe by the ALJ. (Pl.'s Br. at 4.)

Under current law, a severe impairment is one "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c) (2009); see also 20 C.F.R. § 404.1521(a) (2009); Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987) (recognizing change in severity standard). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b) (2009). Examples of basic work activities are:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

Id.

Social Security Ruling ("SSR") 96-3p provides that "[a]t step 2 of the sequential evaluation process, an impairment or combination of impairments is considered 'severe' if it significantly limits an individual's physical or mental abilities to do basic work activities; an impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities. " SSR 96-3p, 1996 WL 362204, *34469 (July 2, 1996).

The court proposes that the presiding District Judge find that substantial evidence supports the ALJ's determination that Claimant did not suffer a severe back impairment prior to the expiration of his insured status in July of 2007. In his decision, the ALJ explained that

> an MRI report of the claimant's lumbar spine dated October 10, 2002, showed impressions of only a slight degree of anterior listhesis of L4 on L5 with minimal bulge with associated mild or early canal stenosis and slight nonfocal disc bulge at L5-S1 (Exhibit 8F). There are no treatment notes through the claimant's date last insured that indicate he had limitations due to a back complaint. In fact, the claimant acknowledged during his testimony he only recently started on pain medication. Thus the record supports finding the claimant has no severe back impairment through the date last insured.

(Tr. at 17.)

The ALJ's findings are consistent with and supported by substantial medical evidence of record and are consistent with the applicable regulations cited above and SSR 96-3p. The findings on the MRI are minimal, and the subsequent treatment notes do not indicate Claimant was treated for back pain during the relevant time period. In fact, Claimant explicitly stated at the hearing that the basis of his disability claim was his hip issue. (Tr. at 38.) Thus, the court proposes that the presiding District Judge find that substantial evidence supports the ALJ's determination that Claimant's back impairment

was not severe prior to the expiration of his insured status.

Residual Functional Capacity Finding

Next, Claimant argues that the ALJ erred in finding that he had the residual functional capacity to perform a full range of medium work through his date last insured on March 31, 2007. Claimant relies in large part on the opinion of Dr. Sethi. (Pl.'s Br. at 4-5.)

In his decision, the ALJ found Claimant capable of performing the full range of medium work and, as a result, concluded that Claimant was capable of returning to his past relevant work as a repair technician, electrical worker and woodcutter. (Tr. at 17, 20.) The ALJ explained that

> [i]n comparing the claimant's residual functional capacity with the physical and mental demands of his work as a repair technician, woodcutter, and electrical worker, the undersigned finds that the claimant was able to perform these jobs as actually and generally performed. In fact, the vocational expert testified based on the limitations in the residual functional capacity, the claimant could perform the jobs she identified as his past relevant work and the undersigned accepts her testimony, which is in accordance with SSR 00-4p.

(Tr. at 20.)

The court proposes that the presiding District Judge find that substantial evidence supports the ALJ's determination that Claimant can return to his past relevant work. Claimant relies on evidence outside the relevant time period which does not relate back to the period prior to the expiration of his insured status.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Thomas E. Johnston.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties and Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

   November 21, 2011  
        Date

Mary E. Stanley  
United States Magistrate Judge